CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
9/30/18

JULIA C. DUDLEY, CLERK
BY:   s/ K. DOTSON
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| ALLA Z., | ) | |
| Plaintiff, | ) | Civil Action No. 5:17-cv-00061 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | By:   Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

Plaintiff Alla Z., appearing pro se, asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 4. Having considered the administrative record, the parties' briefs, and the applicable law, I find that substantial evidence supports the Commissioner's final decision.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of

proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Alla Z. filed the underlying DIB application on January 7, 2013, at which time she was forty-nine years old. Administrative Record ("R.") 269, ECF No. 9. She alleged disability beginning on January 2, 2013, based on fluid in her breasts, arthritis, and high blood pressure. R. 269, 273. Disability Determination Services ("DDS"), the state agency, denied her current claim initially in July 2013, R. 140–49, and on reconsideration in July 2014, R. 150–64. On February 17, 2016, Alla Z., who spoke Russian, but could not speak English, R. 270, 272, appeared pro se with an interpreter and testified at an administrative hearing before ALJ Mark A. O'Hara. *See* R. 108–39. A vocational expert ("VE") also testified at this hearing. R. 131–38.

The ALJ issued an unfavorable decision on April 7, 2016. *See* R. 64–88. He first found that although Alla Z. had worked since her alleged onset of disability on January 7, 2013, that work did not amount to substantial gainful activity. R. 66. At step two, the ALJ found that Alla Z. had severe impairments of obesity, history of ventral hernia repair, history of arthroscopic procedures on both knees, and history of breast cancer surgery. *Id.* All of her other conditions, including anxiety and depression, were deemed non-severe medical impairments, R. 67–68, and none of her severe impairments met or medically equaled any of the relevant Listings, R. 68–69.

The ALJ Owen then addressed Alla Z.'s residual functional capacity ("RFC") and found that she could perform light work that involved no climbing ladders, ropes, or scaffolds and occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling.[1] R. 68.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A person who can meet these modest lifting requirements can perform light work only if he or she can also "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455

Considering this RFC and the testimony of the VE, the ALJ determined that Alla Z. could return to her past relevant work as a warehouse worker as generally performed and, in the alternative, could perform other light work that was widely available in the national and state economies, including cleaner, marker, and packer. R. 86–87. The Appeals Council denied Alla Z.'s request for review, R. 55–58, and this appeal followed.

## III. Discussion

Alla Z. filed a letter brief explaining her position why the Commissioner's final decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded. *See* Pl.'s Br., ECF No. 12; W.D. Va. Gen. R. 4(c). First, she challenges the ALJ's finding that her mental impairments were non-severe. Pl.'s Br. 3. She argues that her depression and anxiety caused significant limitations in her ability to sleep, remember, understand, focus, and respond to people, situations, and changes in the workplace. She also contends that her mental impairments meet Listings 12.04 and 12.06. Second, Alla Z. argues that she "perhaps" meets Listing 14.09 for arthritis. *Id.* Third, she challenges the ALJ's RFC determination as to her physical abilities. *Id.* at 2–3. She states that her chest pain and bilateral knee pain restrict her ability to lift and stand to a degree greater than the light exertional limitation assessed by the ALJ. *See id.*

*A.     Alla Z.'s Mental Impairments*

Regarding the evidence of mental impairment, Alla Z. submitted several functional reports and questionnaires to the state agency. In those submissions, she reported having problems with her memory. R. 309. She also reported that she read daily, talked on the phone

---

n.1 (4th Cir. 1990). Light work typically requires a total of six hours of standing and walking during an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983); *see Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010).

every day, went to church twice a week and the grocery store once a week. Additionally, she could follow written and spoken instructions, and she got along with authority figures. She had difficulty handling stress and changes in routine. R. 305.

The medical records show that Alla Z. received treatment for depression and anxiety from John D. Wenger, D.O., her primary care provider. At times she reported having insomnia, but the medical records do not document other symptoms. Alla Z.'s treatment consisted solely of prescriptions for citalopram and trazodone, which she said were helpful. *See, e.g.*, R. 873, 911. Her treatment records contain few mental exam findings, but when findings were recorded, they showed that Alla Z. had a normal affect and mood and was fully oriented. R. 660–62, 664–66, 830–32, 873–75, 911–13. At the administrative hearing, Alla Z. testified that she had difficulty sleeping. R. 127. She also had memory problems, but she had not yet discussed them with her doctors. R. 128.

At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508. An impairment or combination of impairments "is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Conversely, a medical impairment or combination of impairments "can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual," *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984),

that it does not meaningfully disrupt his or her ability to perform basic work activities, SSR 96-3p, 1996 WL 374181, at *2. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229–30 (4th Cir. 2011) (per curiam) (explaining that although step two involves "a threshold question" with a de minimus severity requirement, "medical conditions alone do not entitle a claimant to disability benefits; '[t]here must be a showing of related functional loss'" (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986))).

The determination whether a medically determinable impairment is or is not severe "requires a careful evaluation of the medical findings that describe the impairment(s) and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's . . . ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *2. Even when a medical impairment is properly found to be non-severe, the ALJ still must consider the extent, if any, to which the impairment and any related symptoms impede the claimant's ability to perform more specific work-related functions under ordinary workplace conditions. *See* 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2–3, *5 (July 2, 1996).

To evaluate the severity of a mental impairment, the Commissioner employs a "special technique" described in 20 C.F.R. § 404.1520a. The Commissioner must rate the degree of a claimant's functional limitation in four areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3) (2016). If a claimant's limitations in the first three areas are "none" or "mild," and if the claimant has suffered no episodes of decompensation, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [his or her] ability to do basic work activities." *Id.* § 404.1520a(d)(1). In applying this special technique, the ALJ must "consider all

relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including . . . chronic mental disorders, structured settings, medication, and other treatment." *Id.* § 404.1520a(c)(1).

In assessing Alla Z.'s anxiety and depression at step two, the ALJ considered the DDS psychologists' analysis and opinion that these impairments caused mild limitation in concentration, persistence, and pace and no limitation in activities of daily living or social functioning. R. 67, 86 (citing R. 143, 158). He also noted that the DDS psychologists had determined that Alla Z.'s mental impairments were non-severe and did not meet a listing. R. 67; *see* R. 143–44, 158–59. The ALJ agreed with the DDS psychologists' findings. R. 67, 86. He echoed their finding that Alla Z. had not sought treatment from a mental health professional, but had been prescribed medications by her general practitioner. R. 67; *see* R. 143, 158. Moreover, in discussing the medical evidence, the ALJ identified the few instances where treatment notes documented Alla Z.'s anxiety or depression and that the notes showed normal exam findings. R. 76–80, 82. He also reviewed Alla Z.'s functional reports, and he determined that the reported activities and abilities showed no more than mild limitation. R. 67. The ALJ's findings are all amply supported by the record, and his findings support his determination that Alla Z.'s depression and anxiety did not cause more than minimal functional limitation in her ability to perform basic work activities. Thus, I find that substantial evidence supports the ALJ's determination that Alla Z. did not have a severe mental impairment. Furthermore, because a non-severe impairment cannot meet a listing, *see* 20 C.F.R. § 404.1520(a)(4), (a)(4)(ii)–(iii) (explaining that if the agency finds a person does not have a severe impairment, the agency does

not proceed to step three to assess whether the person meets a listing), I also reject Alla Z.'s argument that she meets Listings 12.04 and 12.06 for anxiety and depression.

B.     *Alla Z.'s Physical Impairments*

1.     *Breast Cancer*

In May 2012, Alla Z. was diagnosed with breast cancer. R. 597–601. The following month, she underwent surgery on her right breast to remove a mass. R. 582–83. She also received radiation treatments through September 2012. R. 525–26, 569. At an appointment in late June with a nurse practitioner, Alla Z. reported some "increased discomfort" doing daily activities, but she experienced significant relief upon aspiration of a seroma. R. 572. Her medical provider advised that she was expected to need additional aspirations and excused her from work for one more week. Alla Z. was using ice and Tylenol, which she said helped to control her pain. *Id.* In November, Alla Z. reported that she had returned to work and was experiencing some pain in her right breast, but she had no arm swelling. R. 527. In December, Alla Z. again complained of pain and swelling in her right breast. Heidi D. Rafferty, M.D., noted a seroma from which she aspirated fluid, resulting in a decrease in pain and swelling. R. 522. In January 2013, Alla Z. again had a seroma, which Dr. Rafferty aspirated. Dr. Rafferty explained that the seroma was a normal consequence of surgery followed by radiation, and she expected that the amount of fluid and discomfort would decrease over time. She scheduled a follow-up for April 2013 and reminded Alla Z. that she could come to the clinic before her next appointment if the seroma required aspiration. R. 520. In March 2014, Mary H. Witt, M.D., examined Alla Z. and noted that she was doing well. She did have persistent seroma that had required drainage, providing temporary relief. R. 744–45. Later that month Dr. Rafferty aspirated the seroma during a routine six-month check up. R. 817. She found that Alla Z.'s extremities had normal range of motion,

strength, and stability with no pain. Dr. Rafferty recommended that Alla Z. return for a clinical physical examination in six months and return for aspiration of the seroma as needed. R. 817–21.

Alla Z. next sought treatment related to her breast cancer eighteen months later on December 14, 2015. Alla Z. complained of pain in her right breast, especially with movement. On examination, Dr. Witt observed a "fairly sizeable palpable movable mass" under the incision on her right breast, and she noted that the size of the mass was stable from the last visit in March 2014. R. 1191. Dr. Witt wanted to order an ultrasound to evaluate her pain, but Alla Z. said she did not have insurance, so she could not have one. Dr. Witt noted that Alla Z. had an application for hospital assistance and if she received assistance, Alla Z. should call her to get the mammogram scheduled. Dr. Witt scheduled her for follow-up appointment in six months. R. 1191–92. On a prescription pad, Dr. Witt also wrote, "Due to pain after surgery patient [is] unable to lift [greater than ten pounds] or do repetitive activity with right arm." R. 1212.

### 2. Abdominal Hernia

On March 20, 2012, Alla Z. underwent an appendectomy, lysis of adhesions, and ventral hernia repair. R. 632–34, 685. At a follow-up appointment in April, Thomas M. Oates, M.D., advised that she should continue to use an abdominal binder, lose weight, and avoid heavy lifting for six weeks to limit risk of recurrence. R. 685–87. In May, she continued to complain of incisional pain and said she had tried unsuccessfully to return to work. Dr. Oates opined that she should stay out of work for a total of eight weeks. R. 681–83. In June, Dr. Oates detected another hernia, but determined that Alla Z. should wait at least one year from her previous surgery to have another hernia repair. R. 677–79. At a visit in early February 2013, Alla Z. complained of abdominal pain. Dr. Oates noted, "[t]he patient as expected developed a recurrent hernia. She remains obese and also is employed at Marshall's distribution doing lifting of heavy boxes." R.

672. Her symptoms were aggravated by lifting and standing. *See id.* Dr. Oates reported that Alla Z. mentioned "that what she really wants is full disability." *Id.* He "made clear that surgery was not a path to a declaration of disability. Time off from work would be expected to be 6 weeks." R. 674.

On February 18, Dr. Oates performed a hernia repair and installed mesh. Alla Z. was admitted to the hospital for overnight observation and discharged the next day with instructions to wear an abdominal binder on the lower part of her abdomen and not to resume work for at least six weeks. R. 514–15. At a follow-up appointment on March 5, Dr. Oates found that Alla Z. was doing well, and he again instructed that she stay off work for at least six "full weeks post procedure." R. 668–70. On April 24, Dr. Oates noted that Alla Z. had "mild tenderness" in her left lower quadrant, but no palpable hernia. R. 907. He determined that her hernia had resolved and she could "now resume work with 2 more weeks of light duty to recondition for full activity." *Id.* On April 30, she reported worsening abdominal pain, R. 896, but on May 30, Alla Z. saw Dr. Oates, and she denied any discomfort at the hernia site, R. 887–90. In the medical evidence presented to the ALJ, Alla Z. did not voice any other complaints of hernia-related pain or problems.

### 3.      Right and Left Knees

On January 17, 2013, Alla Z. saw Alan J. Morgan, M.D., with complaints of "moderate-severe" right knee pain that caused difficulty standing. R. 644. On examination, Dr. Morgan noted normal findings, except positive Varus stress test and "exquisite tenderness over the right lateral knee in the joint line." R. 646. He was concerned about possible torn meniscus, and he prescribed oxycodone and referred her for an X-ray and orthopedic evaluation. *Id.*

On October 24, Mark E. Coggins, M.D., at RMH Orthopedic and Sports Medicine Clinic ("RMH Orthopedic"), assessed Alla Z.'s complaints of lumbar spine and right knee discomfort. R. 838. Examination of her lower extremities revealed full strength and normal sensation and reflexes, but tenderness over the right knee lateral joint line. R. 844. An MRI of her lumbar spine showed facet join arthropathy at L4-L5 and L5-S1 and disc narrowing at L3-L4. R. 742. X-rays showed "mild to moderate" degenerative disc space narrowing at L3-L4 with lesser degeneration at L2-L3 and L4-L5. R. 845. Dr. Coggins referred Alla Z. to physical therapy for her knee pain and recommended weight loss and exercise for her back, but no other active treatment. *Id.* If the therapy did not help her knee, he recommended MRI and referral to one of his associates. R. 838–46.

On March 19, 2014, Alla Z. complained to Dr. Wenger that her right knee pain was worsening. She reported that standing at work all day caused pain that was "unbearable at times." R. 830. He noted that she had been attending physical therapy, but did not have good results. *Id.* He referred Alla Z. to an orthopedic doctor. R. 830–32. He restricted Alla Z.'s activity to "light duty," consisting of "no prolonged standing" and no lifting greater than fifteen pounds. R. 1034. Dr. Wenger also completed a medical leave form on which he indicated that he had advised Alla Z. to cease work as of March 19, 2014, because of chronic right knee pain and referred her to an orthopedist. He further stated that she could return to work on June 18, 2014, after her next appointment. R. 1033.

On April 1, 2014, Alla Z. visited Benjamin I. Mwanika, D.O., at RMH Orthopedic. She complained of right knee pain that began a year earlier and had recently intensified. Walking, standing, and squatting made the pain worse. On examination of her right knee, Dr. Mwanika found tenderness and positive McMurray's, valgus stress, and varus stress tests, but no crepitus

or other abnormalities. R. 809–12. An X-Ray showed mild osteoarthritis. R. 982. Dr. Mwanika administered a steroid injection, R. 812, and restricted her to lifting no more than fifteen pounds until she was re-evaluated, R. 1032. Alla Z. followed up with Dr. Mwanika on April 29 and reported no improvement. R. 1050. Concerned about a meniscal tear, he ordered an MRI. *See* R. 1049–53. The MRI showed medial and lateral menisci tears, marginal osteophytosis, preserved patellofemoral compartment, and moderate joint effusion. R. 1109. Dr. Mwanika referred Alla Z. to an orthopedic surgeon for assessment. R. 1044–48.

On May 21, Chad J. Muxlow, D.O., at RMH Orthopedic, assessed Alla Z.'s right knee. *See* R. 1038. He noted tenderness to palpation and positive McMurray's test, but other testing was stable or negative. R. 1041, 1043. X-rays of Alla Z.'s right knee showed no significant joint space narrowing or arthritis. R. 1043. Dr. Muxlow reviewed the May 14 MRI results and determined that they showed chondromalcia, or softening of the cartilage, *Dorland's Illustrated Medical Dictionary* 352 (32d ed. 2012). R. 1043. Dr. Muxlow noted that conservative treatment had not relieved Alla Z.'s knee pain or mechanical symptoms. He offered her options of arthroscopic surgery or continuing with conservative care in the form of icing, anti-inflammatory medications, injections, and physical therapy, and she elected surgery. R. 1043.

On June 19, 2014, Alla Z. had surgery for a right knee meniscus tear, and she was discharged home in stable condition with instructions to bear weight as tolerated on the right lower extremity. R. 1112–14. In November, Alla Z. was evaluated for bilateral knee pain and administered cortisone injections. R. 1158. In early December, MRIs were obtained of both knees. R. 1138–39. MRI of her right knee showed evidence of chondromalacia, but no recurrent tear. R. 1139. MRI of her left knee showed medial and lateral meniscus tears. R. 1138. Alla Z. described "some catching and sharp pain" in her left knee and dull, constant, aching pain in her

right. R. 1158. On examination, she had some crepitus, tenderness, and positive McMurray's test. She said that anti-inflammatory medications, physical therapy, exercises, and cortisone shots had not eliminated her pain. She decided to proceed with surgery. R. 1158–59.

On December 29, Dr. Muxlow performed a meniscectomy to repair Alla Z.'s left knee meniscus tear. She was discharged home in stable condition with instructions to ice and elevate her knee. She could bear weight on her left leg as tolerated. R. 1143–45. Dr. Muxlow saw her on January 6, 2015. He noted that she was using crutches and doing well, even though Alla Z. said she had no significant improvement over the past few days. He referred her to physical therapy and recommended that she continue to ice her knee and take pain medications, including hydrocodone, as needed. R. 1184–85, 1187. On January 27, Alla Z. reported progress with pain control, strength, and range of motion. Dr. Muxlow recommended that she continue with physical therapy. He said she should remain off work at that time because she was "unable to stand for extended periods," R. 1182. *See* R. 1180–83. Dr. Muxlow saw Alla Z. again on February 27. She was doing "okay" and still making progress on her left knee with physical therapy and exercises. She did not complain about her right knee. He continued her anti-inflammatory medications and physical therapy, and he provided a brace for added stability. Dr. Muxlow noted that Alla Z. "desires to remain off work and she states she is unable to perform her job duties with recurrent limitations of her knee. She was provided a work note today." R. 1175–78.

4.      *State Agency Physicians' Opinions*

In July 2013, Josephine Cader, M.D., reviewed Alla Z.'s medical records for the state agency. Dr. Cader found Alla Z.'s hernia and malignant neoplasm of the breast to be severe impairments. She determined that Alla Z. would need some time to recover from hernia repair

surgery, citing her treating physician's assessment that she would be out of work for six week. Dr. Cader noted that otherwise she was doing well. Dr. Cader opined that Alla Z. could perform light work, lifting twenty pound occasionally and ten pounds frequently. Additionally, she could walk or stand and sit for six hours in an eight hour workday with normal breaks. Alla Z. could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; stoop; crouch; and crawl; and frequently balance. R. 143–47.

In July 2014, Robert McGuffin, M.D., conducted a reconsideration review. In particular, he reviewed the records concerning Alla Z.'s right knee and torn meniscus. *See* R. 152–55. He identified two additional severe impairments: degenerative disc disorder as well as osteoarthritis and allied disorders. R. 158. He noted that her right knee did not have severe degenerative changes, and he determined that she would recover from the meniscectomy and her condition would improve to the extent that she could perform light work. Dr. McGuffin also took into account Dr. Oates's opinion that Alla Z. should stay out of work for six weeks after her hernia repair and that she had no severe or recurrent findings relating to breast cancer. R. 157, 159. He assessed the same restrictions as Dr. Cader, except that Alla Z. could balance occasionally. R. 157–62.

5.      *Alla Z.'s Statements*

In reports submitted to the state agency in 2013, Alla Z. reported that she made simple meals, did light housework, shopped for groceries weekly, and went to church twice a week. She could lift only five pounds, and she had to rest for fifteen minutes after walking for about six minutes. R. 299–306, 337–44.

At the administrative hearing in February 2016, Alla Z. testified with the assistance of a Russian language interpreter. She testified that she was experiencing significant abdominal pain

from a recurring hernia. She explained that a hernia had developed through the mesh installed in a previous surgery. An additional hernia repair had not been performed because she had lost her insurance when she was terminated from her job. R. 118–19. Alla Z. last worked in March 2014, but leading up to that date she had to "constantly" take medical leave for her various impairments. R. 120. She had worked in a warehouse pricing and marking household items. R. 120–21. Her job required lifting of up to twenty pounds, but Alla Z. had trouble meeting these demands because of her abdominal surgeries. R. 121, 123–24. She also had trouble standing at work because of her knee surgeries. R. 121. After the knee surgeries, Alla Z. is able to walk, but she still has knee pain. R. 125. The lump in her chest also caused significant pain when she used her right arm to manipulate things or lift. R. 124. Additionally, she had arthritis in two fingers on each hand that made manipulating things difficult, R. 125–26, and she had trouble sleeping and remembering things, R. 127–28. On a typical day, she did home exercises for her abdomen and legs, prepared simple meals, and shopped for groceries. R. 127–30. She had to lie down repeatedly throughout the day. R. 128.

## C.     RFC Determination

Alla Z.'s other arguments challenge the ALJ's RFC determination. A claimant's RFC represents her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" despite her medical impairments." SSR 96-8p, 1996 WL 374184, at *2 (emphasis omitted); *see* 20 C.F.R. § 404.1545. It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller*, 459 F. App'x at 230–31, and it must reflect the combined functionally limiting effects of impairments that are supported by the medical evidence or the claimant's credible reports of pain or other symptoms, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015).

The regulations set out a two-step process for ALJs to evaluate a claimant's symptoms. *Lewis*, 858 F.3d at 865–66; 20 C.F.R. § 404.1529. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Lewis*, 858 F.3d at 866. Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability," *id.*, to work on a regular and continuing basis, *see Mascio*, 780 F.3d at 639. "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects," *Lewis*, 858 F.3d at 866, and articulate specific reasons for the weight assigned to those statements, *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013). When conducting this evaluation, the ALJ must consider all the evidence in the record bearing on the claimant's allegations that she is disabled by pain or other symptoms caused by a medical impairment; he cannot reject the claimant's description of her symptoms "solely because the available objective medical evidence does not substantiate" that description. 20 C.F.R. § 404.1529(c); *see Hines*, 453 F.3d at 565. The ALJ's reasons for discounting a claimant's complaints need only be legally adequate and supported by substantial evidence in the record. *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (per curiam) (citing *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's RFC assessment must "include a narrative discussion describing" how medical facts and nonmedical evidence "support[] each conclusion," *Mascio*, 780 F.3d at 636, and explaining why the ALJ discounted any "obviously probative" evidence, *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977), that supported the individual's claim for disability benefits, *Ezzell v. Berryhill*, 688 F. App'x 199, 200 (4th Cir. 2017). This

discussion should "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), that the claimant retains a certain ability to sustain work-related activities, *Mascio*, 780 F.3d at 636–37. "In other words, the ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion" that the claimant is not disabled. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alterations omitted).

In assessing Alla Z.'s RFC, the ALJ reviewed her testimony at the administrative hearing and her reports submitted to the state agency. R. 70–71. He found that her report of symptoms and limitations was not consistent with the record, R. 71, which he discussed in significant detail, *see* R. 71–83. His rationale for this credibility determination rested on a number of findings.

First, he determined that Alla Z.'s treatment did not support the severity of her symptoms. He acknowledged that she had undergone hernia repair surgery and bilateral knee surgeries, but he found that those surgeries were effective in controlling her symptoms within twelve months. R. 83; *see Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or other treatment, it is not disabling."). He then observed that her treatment had otherwise been routine, conservative, and unremarkable, and it involved some lengthy gaps in visits to providers. R. 83. As further explanation, he noted that Alla Z. had hernia repair surgery in February 2013, and at the end of April, her doctor allowed her to resume work after two more weeks at light duty. *Cf. Justus v. Soc. Sec. Admin.*, No. 4:14cv45, 2015 WL 5510921, at *8 (W.D. Va. Sept. 17, 2015) (noting that "a treating physician's failure to impose 'symptom-related functional limitations and restrictions' can weigh against" the claimant's statements describing the intensity and limiting effects of the same symptoms (quoting 20 C.F.R. §

404.1529(c)(3)). Her last visit with Dr. Oates came a month later, and there were no additional hernia-related follow-up appointments or complaints of abdominal pain. R. 83–84. As to her knee problems, the ALJ noted that Alla Z. testified that she was able to walk. Additionally, by February 2015, she was making progress with her left knee and she did not complain about her right knee. Later in December 2015, she had a normal gait and physical exam. R. 84. As to her chest pain from the seroma, the ALJ noted that her treatment had been sporadic and he found that signs of tenderness did not suggest debilitating pain in light of the infrequent medical visits and lack of pain medications. R. 84.

The ALJ's explanation is largely supported by the record. He acknowledged that Alla Z. underwent surgeries for hernia and her knees. The recovery period from each of these surgeries ranged from a few weeks to two months. After the recovery period from her hernia repair, Dr. Oates opined that Alla Z. could return to her job at Marshall's. He even noted that he expected her hernia would reoccur, but he did not impose any permanent limitations on her functioning.

He offered a similar reason for questioning the severity of Alla Z.'s complaints of right breast pain and related right arm limitations. After surgery and radiation treatment, both of which took place in 2012, Alla Z. was primarily treated for this impairment with aspirations of a seroma on her right chest. Although those aspirations were performed a number of times from 2012 to March 2014, Alla Z. did not seek additional treatment again until December 2015. As the ALJ noted, her gap in treatment exceeded eighteen months. Moreover, her doctors treated the seroma conservatively with aspirations when necessary, and they did not record any related signs or observations suggesting any significant limitations.

As to Alla Z.'s knee impairments, the ALJ noted that she experienced some pain, but he also noted that she testified she was able to walk. R. 84. Although her testimony is lacking in

detail, it is consistent with other evidence that her knee problems were primarily related to the torn meniscus in her knees, rather than significant degenerative changes, and that both of her knees were repaired with surgery. The ALJ noted that Alla Z. experienced gradual improvement in her right knee after surgery to the point that she did not complain about it in February 2015. He noted similar progress with her left knee after surgery. Additionally, the ALJ relied on the medical opinion of Dr. McGuffin that Alla Z.'s right knee would improve after surgery to the point that she could do light work. Thus, for each of these impairments, I find that the ALJ's analysis of Alla Z.'s treatment and the signs and observations in her medical records support his assessment that she did not have work-preclusive limitations.

Second, the ALJ found that Alla Z.'s activities were inconsistent with complete disability because she had worked since her alleged onset date. He previously noted that she testified to working until March 2014. R. 70. This reason provides limited support for the ALJ's decision. The record documents that Alla Z. worked through March 2014, but she frequently missed work to undergo and recover from medical procedures. Thus, although this evidence shows that she was able to return to work at times, she did not work consistently after her alleged onset date.

Third, the ALJ explained that although Alla Z. testified about having problems with insomnia, memory, and handling objects because of arthritis, she did not report those symptoms to medical providers as ongoing problems. R. 83; *see Fluellen v. Colvin*, No. 4:14cv30, 2015 WL 2238997, at *4 (W.D. Va. May 12, 2015) (affirming the ALJ's adverse credibility determination where the claimant's medical record showed that she repeatedly either failed to report or expressly denied the symptoms and limitations that she described in her hearing testimony). This lack of reported symptoms or complaints of problems and isolated treatment provide support for

the ALJ's finding that these conditions did not cause disabling symptoms.[2] *Dunn v. Colvin*, 607

F. App'x 264, 274–76 (4th Cir. 2015); *Fluellen v. Colvin*, No. 4:14cv30, 2015 WL 2238997, at

*4; *see also Bishop*, 583 F. App'x at 68 (affirming ALJ's adverse credibility determination

where "the ALJ cited specific contradictory testimony and evidence in analyzing Bishop's

credibility").

Accordingly, I find that the ALJ provided legitimate reasons supported by substantial

evidence for questioning the credibility of the severity of Alla Z.'s report of symptoms and

limitations.

The ALJ also assessed a number of medical opinions. Medical opinions are statements

from "acceptable medical sources," such as physicians, that reflect the source's judgments about

the nature and severity of the claimant's impairment, including his symptoms, diagnosis and

prognosis, functional limitations, and remaining abilities. 20 C.F.R. § 404.1527(a)(1). The ALJ

must adequately explain the weight afforded to each medical opinion in the claimant's record,

taking into account relevant factors such as the nature and extent of the physician's treatment

relationship with the claimant; how well the physician explained or supported the opinion; the

opinion's consistency with the record as a whole; and whether the opinion pertains to the

physician's area of specialty. *Id.* § 404.1527(c). Medical opinions from treating and examining

---

[2] Alla Z. asserts that she "perhaps" meets Listing 14.09 for inflammatory arthritis. A claimant's severe impairment meets a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. § 404.1525(c)(3); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (holding that the claimant must prove that he meets all of a listing's criteria). A claimant who meets the medical criteria for a listing is presumed disabled regardless of his or her vocational profile; thus, satisfying the criteria for a listing requires a claimant to demonstrate more significant impairment than the baseline statutory disability standard of being unable to perform "substantial gainful activity." *Zebley*, 493 U.S. at 532. The single treatment note discussing Alla Z.'s complaint of morning stiffness and pain in her hands and fingers and treatment with diclofenac, R. 911–13, does not demonstrate any of the criteria necessary to meet the listing. *See* 20 C.F.R. pt. 404, subpt. P, app 1 § 14.09 (2016).

physicians typically deserve more weight than those from non-examining sources, such as a medical expert or the state agency medical reviewers. *See Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 268 (4th Cir. 2017); 20 C.F.R. § 404.1527(c).

First, Dr. Oates kept Alla Z. out of work from February 18, 2013, the date of her hernia repair surgery, until April 29, 2013, when he allowed her to resume work with a light duty restriction for two weeks to recondition for full activity. The ALJ found that Dr. Oates's opinion indicated that Alla Z.'s limitations related to her hernia surgery would not last for a continuous period of twelve months or more. R. 84. This determination was reasonable as Dr. Oates's opinion was limited in time and reflected functional restrictions that lasted not more than three months. For similar reasons, the ALJ reasonably rejected an opinion from an unidentified source that Alla Z. had a lifting restriction for two weeks. *See* R. 84–85.

Second, on March 19, 2014, Dr. Wenger opined that Alla Z. was limited to light duty with no prolonged standing or lifting greater than fifteen pounds. The ALJ questioned Dr. Wenger's opinion because his contemporaneous treatment notes show unremarkable exam findings. An ALJ may reasonably question a treating physician's opinion where it is inconsistent with the physician's own findings on examination. Additionally, on another form Dr. Wenger opined that Alla Z. was to cease working on March 19 and not return to work until after her next follow-up appointment on June 18. The ALJ observed that the record did not contain any notes showing that Alla Z. followed up with Dr. Wenger on June 18 or at any other time. The ALJ found that this second opinion was limited in time to three months; thus, he did not give it any weight because it did not reflect an assessment of Alla Z.'s functional abilities for a continuous period of twelve months or more. These findings are amply supported by the record and provide legitimate reasons for discounting Dr. Wenger's opinion. R. 85.

Third, the ALJ evaluated the opinions of Drs. Mwanika and Muxlow. As the ALJ noted, both of their opinions restricted Alla Z.'s functioning at different times because of her right and left knee impairments. Dr. Mwanika limited Alla Z.'s lifting to no more than fifteen pounds until she could be reevaluated. Dr. Muxlow documented that Alla Z. "desires to remain off work," and he provided her a work note. The ALJ accurately observed that neither opinion explicitly attributed any limitation to a continuous period of twelve months. Accordingly, he gave their opinions no weight because they did not address Alla Z.'s functional ability for a period of twelve consecutive months. R. 85. The ALJ reasonably determined that the doctors' opinions did not cover a determinable amount of time. Furthermore, in other parts of his decision, the ALJ explained that Alla Z.'s treatment and her doctors' observations showed that her knee conditions improved after her surgeries. The ALJ's analysis is sufficient considering the lack of detail in Drs. Mwanika and Muxlow's opinions.

Fourth, Dr. Witt opined that Alla Z. was unable to lift more than ten pounds with her right arm because of pain related to her breast cancer, recurring seroma, and treatment. The ALJ questioned this opinion, citing Alla Z.'s eighteen month gap in treatment and the fact that no pain medications had been prescribed to address this impairment. He also noted that Dr. Witt's findings of a mass and tenderness in Alla Z.'s breast did not support her assessment of arm restrictions. The ALJ also found that the longitudinal record, which he had previously discussed at length and noted no exam findings showing right arm limitations, did not support Dr. Witt's lifting restriction. R. 85–86. Each of these reasons is supported by the record and provides a legitimate basis to disregard Dr. Witt's opinion.

Lastly, the ALJ considered the opinions of the DDS physicians. They determined that Alla Z. could perform light work with some additional postural limitations. The ALJ adopted

their opinions, finding them consistent with the treatment notes, imaging, and test results. The ALJ thoroughly discussed this evidence in his lengthy, well-written opinion. The ALJ may rely on a non-examining source's medical opinion

> where that opinion has sufficient indicia of "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion."

*Woods*, 888 F.3d at 695 (quoting *Brown*, 873 F.3d at 268); *see* 20 C.F.R. § 404.1527(c)(3).

Under this standard, the ALJ's assessment of Dr. McGuffin's opinion in particular is supported by substantial evidence. In determining that Alla Z. could perform light work, Dr. McGuffin noted that she had no severe or recurrent findings relating to breast cancer and Dr. Oates kept her off work for six weeks after hernia repair. As to her right knee, he noted that she did not have severe degenerative changes, and he opined that she would recover from right knee surgery and her condition would improve so that she could perform light work. As the ALJ noted, the record showed that Alla Z.'s right knee impairment improved after surgery. R. 84. Although Dr. McGuffin did not review records of Alla Z.'s left knee surgery, the ALJ noted that treatment records showed she continued to make progress after her surgery. Dr. McGuffin offered a reasonable explanation of the limitations he determined were attributable to Alla Z.'s impairments. The ALJ's review of Dr. McGuffin's opinion and his finding that the opinion was consistent with the record as a whole provide legitimate grounds for the ALJ to rely on the opinion of the non-examining DDS physician. A reviewing court "must defer to the ALJ's assignments of weight" among differing medical opinions unless his underlying findings or rationale "are not supported by substantial evidence" in the record. *Dunn*, 607 F. App'x at 271; *see also Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016). Accordingly, I find that the ALJ's assessment of the medical opinions is supported by substantial evidence.

In sum, the ALJ's assessment of the credibility of Alla Z.'s report of symptoms and limitations and his analysis of the medical opinions provide substantial evidence for his determination that she could perform light work.

C.     New Evidence

Alla Z. submitted additional medical records to the Appeals Council, R. 1–52, and to this Court with her brief, Pl.'s Br., Exs. A–D, ECF Nos. 12, 12-1 to 12-4. In deciding whether to grant or deny review, the Appeals Council must consider any additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). "Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc)). The Appeals Council will then grant review if it finds that "[t]he action, findings or conclusions of the [ALJ] are not supported by substantial evidence," 20 C.F.R. § 404.970(a)(3), including any additional evidence that it was required to consider.

Here, the Appeals Council reviewed the medical records submitted to it, but determined that they did not relate to the period prior to the ALJ's decision, which issued on April 7, 2016. R. 56.[3] The Appeals Council offered no explanation for this finding, *see id.*, as is its prerogative, *see Meyer*, 662 F.3d at 705 ("[N]othing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review."). Under such circumstances, this Court must review the entire record, including the additional evidence, to determine whether substantial evidence supports the ALJ's underlying factual findings. *Meyer*, 662 F.3d at 704; *Riley v. Apfel*, 88 F. Supp. 2d 572, 577 (W.D. Va. 2000). This can be a

_____

[3] The medical records were nonetheless made a part of the Administrative Record. *See* R. 1–52.

difficult task where, as here, the Appeals Council did not explain why the additional evidence did not render the ALJ's "action, findings, or conclusion . . . contrary to the weight of evidence" now in the record. *See Riley*, 88 F. Supp. 2d at 579–80.

A federal court reviewing the Commissioner's final decision is not permitted to make factual findings or attempt to reconcile new evidence with conflicting and supporting evidence in the record. *See Meyer*, 662 F.3d at 707. Courts instead maintain the appropriate balance by reviewing the entire record to determine if there is a "reasonable possibility" that the additional evidence would change the Commissioner's final decision that the applicant is not disabled. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013). Remand is required where "the new evidence 'is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports,'" *Sherman v. Colvin*, No. 4:13cv20, 2014 WL 3344899, at *10 (W.D. Va. July 8, 2014) (quoting *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013)), or where it undermines the ALJ's factual findings and rationale or fills an "evidentiary gap [that] played a role in [the ALJ's] decision" to deny benefits, *Meyer*, 662 F.3d at 707; *cf. Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (ordering remand where evidence submitted to, but not considered by, the Appeals Council "contradict[ed] both the ALJ's findings and underlying reasoning" for denying Jackson's claim and "reinforced the credibility of Jackson's testimony").

Alla Z. submitted to the Appeals Council a treatment note from Dr. Oates dated December 22, 2016, that stated, Alla Z.'s hernia "is now symptomatic enough that a further attempt at repair is justified. . . . She will return in 1 to 2 months to reconsider repair." R. 37. Dr. Oates noted that Alla Z. had evidence of recurrent hernia in 2014, which was confirmed by CT

scan in August 2014, but that she was advised not to undergo another hernia repair at that time. R. 38.

This note undermines the ALJ's finding that Alla Z. did not seek hernia treatment after May 2013. The import of the treatment note, however, is that Alla Z.'s hernia had become symptomatic by December 2016, eight months after the ALJ's decision, but was not symptomatic in August 2014 such that it warranted repair. The note also shows that Alla Z. sought treatment only once between May 2013 and December 2015, thereby confirming the substance of the ALJ's determination that her treatment was not ongoing and included significant gaps. Accordingly, although this evidence is not cumulative, it also is not material because it does not present a reasonable possibility that the ALJ would have changed his decision. Rather, the December 2016 treatment note shows that Alla Z.'s hernia symptoms worsened after the relevant period.

Alla Z. also submitted physical therapy notes from January 2017 that show a possible worsening of knee pain. The notes document that her knee pain had previously improved with physical therapy, but that it had returned. R. 41–42. These notes primarily show that Alla Z.'s knee pain may have worsened many months after the ALJ's decision. As such, they do not relate to the relevant period and are not material.

Lastly, Alla Z. submitted a few medical records with her brief to this Court. All of these records except for one were already in the Administrative Record before the ALJ. The one new record consists of a handwritten note from Dr. Witt stating that Alla Z.'s breast cancer and resulting surgery and radiation caused chronic right breast pain that worsened with use of the right arm and was permanent. ECF No. 12-2. Although the note is dated July 14, 2017, it could relate back to the relevant period. Even so, the note is cumulative of other evidence, specifically

Dr. Witt's December 2015 opinion that Alla Z.'s right breast pain prevented her from lifting more than ten pounds or doing repetitive activities with her right arm. R. 1212. As previously discussed, the ALJ provided sufficient reasons for discounting Dr. Witt's December 2015 opinion. I find that those same reasons apply with equal force to her July 2017 opinion.

Accordingly, none of the records submitted to the Appeals Council or with Alla Z.'s brief amount to new evidence. If Alla Z. wishes to pursue her claim of disability based on these additional records, she should file another application for disability.

## IV. Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Court will **GRANT** the Commissioner's motion for summary judgment, ECF No. 14, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket. A separate order will enter.

The Clerk shall send certified copies of this Memorandum Opinion to the parties.

ENTER: September 30, 2018

Joel C. Hoppe
United States Magistrate Judge